IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DOROTHY KULIK,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>UNITED STATES; STATE OF HAWAII; and COUNTY OF KAUAI,<br><br>　　　　　Defendants. | Civ. No. 18-00306 JMS-KSC<br><br>ORDER (1) GRANTING IFP APPLICATION; AND (2) DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER |

## ORDER (1) GRANTING IFP APPLICATION; AND (2) DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

### I. INTRODUCTION

On August 7, 2019, pro se Plaintiff Dorothy Kulik ("Plaintiff" or "Kulik") filed: (1) an Application to proceed in forma pauperis ("IFP Application"), ECF No. 3; (2) a Motion for Leave to File Petition, ECF No. 1-2; (3) a Complaint and Request for Injunctions and Mandamus ("Complaint"), ECF No. 1; (4) a Notice of Constitutional Challenge of Statutes and Constitutional Amendment, ECF No. 4; and (5) a Motion for Emergency Preliminary Injunctions and Mandamus and Temporary Restraining Order Pending FBI Investigation ("Motion for TRO"), ECF No. 2.

1

In her Motion for TRO, Kulik seeks "immediate entry of a Temporary Restraining Order without notice to Respondents State of Hawaii and County of Kauai, and all persons acting on their behalf, restraining in each and every way pled herein below until such time as the required investigation by the Austin FBI is complete and evidence can be presented at the hearing." Motion for TRO at 2 (emphasis omitted).

For the reasons that follow, the IFP Application is GRANTED, and the Motion for TRO is DENIED.[1]

## II. IFP APPLICATION

Because Plaintiff has made the required showing under 28 U.S.C. § 1915 to proceed in forma pauperis (*i.e.*, without prepayment of fees), the court GRANTS Plaintiff's IFP Application.

## III. BACKGROUND

**A.     The Complaint**

Although the Complaint is far from clear, or even understandable at times, the court does its best to interpret its allegations. The following is a summary of that attempt.

---

[1] Plaintiff's Motion for TRO seeks *both* a TRO and a preliminary injunction. This Order, however, addresses only a TRO. Later, if appropriate, Plaintiff can file a renewed motion for preliminary injunction.

First, Kulik asserts eleven (11) seemingly academic "constitutional" questions regarding a range of issues. Compl. at 1-4. Kulik then appears to claim that the Supreme Court of the United States should exercise original jurisdiction over this matter. Specifically, she claims that "[t]he exclusive judicial powers of SCOTUS in its original jurisdiction cannot be transferred to an inferior court," and that "[f]ailure by the U.S. District Court for the District of Hawaii to recognize my citizen sovereignty constitutes treason[.]" *Id.* at 7.

Kulik generally alleges wrongdoing in connection with the handling of her medical marijuana card (referred to as a "329 Card"), but her specific allegations are not clear. *Id.* at 13. She also alleges that "Kauai is Full of Feces," *id.*, and that the Kauai Veterans Medical Center is engaged in income tax evasion, *id.* at 14. In addition, she alleges that the Kauai Police Department "use[s] . . . lethal force through burning Human Beings to death on The Point."[2] *Id.* She also alleges that she has "been confronted with illegal behavior from alleged government and law enforcement in Hawaii so consistently since [she] first arrived July 18, 2013, that [she has] good reason to believe there is no law and order on the Hawaiian Islands and therefore, U.S. Marshals must be sent in to restore law and

---

[2] "The Point" is alleged to be an area of "state land" that is south of Hanapepe, Kauai. *See* Motion for TRO, Ex. A.

order." *Id*. at 15. Kulik also alleges, confusingly, that the Eleventh Amendment to the constitution is unconstitutional. *Id*. at 23.

The Complaint seeks "to hold U.S. Attorney General Jeff Sessions or his replacement responsible for the ongoing criminal activity by a wide variety of subversives and traitors embedded in the United States government whom he has failed to curtail in dereliction of his duty" through an order requiring Attorney General Sessions or his replacement to show cause, among other things, why: (1) former FBI Director James Comey has not been indicted; (2) "F.B.I. agents are ordered to stand down before every act of terrorism"; and (3) "the murderers of Lavoy Finnicum have not been indicted." *Id*. at 18-25. The Complaint further seeks an order "repealing the 17th Amendment" to the United States Constitution. *Id.* at 26.

**B.     The Motion for TRO**

The focus of the Motion for TRO differs substantially from that of the Complaint. The Motion for TRO discusses the difficulties of living as a homeless person on Kauai. Kulik complains that her car keys were stolen, and there was an attempt to steal her computer. Motion for TRO at 1. She also claims that County of Kauai employees steal from the homeless population. *Id*. at 6. As in the

Complaint, Kulik appears to claim that the State of Hawaii and/or County of Kauai "exterminate Human Beings." *Id*. at 8.

Kulik seeks a broad range of relief, including an injunction that would "allow any and all Human Beings to occupy Public Land *without limitation* in conformity" with the Hawaii State constitution. *Id*. at 3. It appears that Kulik experienced a medical condition caused by stress, perhaps in conjunction with her removal from "The Point," and now seeks an order allowing her to be "able to pitch a tent again at Salt Pond Park" and thereby reduce the possibility of future medical conditions. *Id.* at 8. Kulik also seeks an order for the Austin, Texas FBI office "to immediately commence an investigation, obtain a search warrant, and eventually obtain an arrest warrant for Ranger Larry" for violations of various laws. *Id*. at 11. And finally, Kulik seeks, in part, for the court to declare martial law on the Island of Kauai and to deploy the United States Marshals to "reliev[e] all park rangers and police officers of their duties" in order to "restore law and order." *Id*. at 16. Kulik alleges that she has "good reason to believe [she] will be murdered" without the requested court action. *Id.* at 17.

## IV. **STANDARD OF REVIEW**

A court may issue a TRO without written or oral notice to the adverse party only if the party requesting the relief provides an affidavit or verified

complaint providing specific facts that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).  In addition, the movant or his or her attorney must certify in writing "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Even if such notice is provided, a TRO may issue only if Plaintiffs meet their burden under well-established factors.  The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.  *See, e.g.*, *Hawaii v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1247 (D. Haw. 1999); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary restraining order).

A preliminary injunction is an extraordinary and drastic remedy never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th

6

Cir. 2009). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). *Winter* emphasizes that a plaintiff seeking preliminary relief must demonstrate that "irreparable injury is *likely* in the absence of an injunction." 555 U.S. at 22; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

>Further, in the Ninth Circuit,
>
>there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself. The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant "relief of the same character as that which may be granted finally." Absent that relationship or nexus, the district court lacks authority to grant the relief requested.

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636-37 (9th Cir. 2015) (internal citation omitted).

///

///

# V. **DISCUSSION**

Plaintiff's Motion for TRO is deficient for several reasons. First, it appears that the Motion for TRO does not have a sufficient relationship or nexus to the Complaint. Second, it is unclear whether actual notice has been given to Defendants. And third, Plaintiff has not established that she is likely to succeed on the merits.[3]

The Motion for TRO is premised on the treatment of the homeless on Kauai in general, and specific events relating to Plaintiff. Plaintiff claims that she was mistreated by "Ranger Larry," and fears for her safety and life. As a result, she seeks a court order declaring martial law and deploying the U.S. Marshal Service to restore law and order, and a wide range of other court orders. Although there is some limited overlap between the Complaint and the relief sought in the Motion for TRO, the court finds that, for the most part, the Motion for TRO does not have the sort of relationship or nexus to the Complaint such that the court could order relief. *See Pac. Radiation Oncology, LLC*, 810 F.3d at 636.

Further, Plaintiff has not demonstrated a likelihood of success on the merits to warrant the relief sought. Although the Complaint is verified, it makes

---

[3] Due to the confusing nature of the Complaint's allegations, it is also not clear whether the court has subject-matter jurisdiction. However, because Plaintiff *may* be alleging violation of some undefined constitutional right, the court assumes it has subject-matter jurisdiction for purposes of this order only.

several unsupported allegations, most of which appear fanciful. For instance, based on "Ranger Larry's" alleged conduct towards Plaintiff, she alleges that "Respondents want to murder me." Motion for TRO at 15.

Last, there is no indication that Plaintiff attempted to contact Defendants before filing the Motion for TRO. Thus, the court treats Plaintiff's Motion for TRO (as she appears to request) as an *Ex Parte* Motion for TRO. Rule 65(b)(1) clearly requires two conditions before a court can issue a TRO without giving the opposition an opportunity to be heard. First, "specific facts in an affidavit or a verified complaint [must] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Second, "the movant's attorney [must] certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Plaintiff's Motion for TRO contains no support for issuing a TRO before Defendants can be heard on this matter. Moreover, it is completely silent as to any efforts made to contact Defendants as required by Rule 65(b)(1)(B).

///

///

///

## VI. CONCLUSION

For the reasons set forth above, the court GRANTS Plaintiff's IFP Application and DENIES Plaintiff's Motion for TRO.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 8, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Kulik v. United States et al.,* Civ. No. 18-00306 JMS-KSC, Order (1) Granting IFP Application; and (2) Denying Plaintiff's Motion for Temporary Restraining Order